IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT A. RUFF, | : | |
| Petitioner | : | |
| | : | No. 1:22-cv-01032 |
| v. | : | |
| | : | (Judge Rambo) |
| WARDEN SAGE, | : | |
| Respondent | : | |

### MEMORANDUM

Pending before the Court is pro se Petitioner Robert A. Ruff ("Petitioner")'s petition for a writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2241 ("Section 2241"). (Doc. No. 1.) Petitioner, a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), is currently incarcerated at Federal Correctional Institution Schuylkill in Minersville, Pennsylvania ("FCI Schuylkill"). Petitioner asserts that, while he was incarcerated there, he was denied due process during his disciplinary proceedings. (Id.) For the reasons set forth below, the Court will dismiss the petition for lack of jurisdiction because Petitioner's disciplinary proceedings did not result in the loss of good conduct time.

I.   BACKGROUND

On September 12, 2021, at approximately 11:31 a.m. at FCI Schuylkill, "a fire was announced in Unit 3A cell 118, which housed [Petitioner] and [another inmate]." (Doc. No. 13-1 at 36.) A review of surveillance video footage revealed that "at approximately 11:28:58 a.m., sparks appear[ed], and then a fire erupted in

cell 118." (Id.) Petitioner was identified in the video footage as running towards the cell, then exiting the cell and sitting at a computer terminal. (Id.) The fire suppression system was activated, which caused the sprinkler inside the cell to be activated, and all inmates were evacuated from Unit 3A. (Id.) After the fire was extinguished, a prisoner-made heating device (referred to as a "stinger") was discovered, still plugged into the outlet of the cell. (Id. at 36-37.) Due to the fire and the activation of the fire suppression system, cumulative property damage was assessed at $5,238.32. (Id. at 37.)

Ultimately, Petitioner was charged with violations of Codes: 199/103—Conduct Which Disrupts Most Like Setting a Fire; 218—Destroying Government Property Having a Value in Excess of $100; and 305—Possession of Anything Not Authorized. (Id. at 35.) According to Petitioner, he did not receive a copy of the incident report charging him with these violations. (Doc. Nos. 1 at 6; 14 at 2.) According to Respondent, Petitioner received a copy of the incident report on September 28, 2021, and, later that same day, was advised of his rights before the Disciplinary Hearing Officer ("DHO"). (Doc. Nos. 13 at 2-3; 13-1 at 35.) In support, Respondent has submitted copies of the forms, wherein Petitioner acknowledges that he received those rights. (Id. at 39-40.) Respondent has not submitted, however, a copy of the underlying incident report. See, e.g. (id. at 1).

On September 30, 2021, Petitioner appeared before the DHO for a hearing. (Id. at 35.)  Petitioner, who acknowledged that he understood his rights before the hearing proceeded, admitted to the disciplinary charges brought against him.  (Id.)  More specifically, Petitioner sated as follows: "this whole thing is completely my fault.  I didn't know the difference between a coil and a hot plate.  I was just trying to heat up some food for the football game and it overheated and caught the cell on fire.  I'm accepting full responsibility for this.  [Redacted cellmate name] was at chow.  He didn't know anything about it and had nothing to do with it.  This was all my fault."  (Id.)  In addition to making this statement, Petitioner waived his right to have a staff representative assist him during the hearing and did not call any witnesses or present any documentary evidence.  (Id. at 35-36.)

After considering the reporting officer's written account, photographs of Unit 3A cell 118, a memorandum documenting the total cost of all of the government property that was destroyed as a result of the fire, and Petitioner's own admission of guilt, the DHO found that Petitioner committed violations of Codes: 199/103—Conduct Which Disrupts Most Like Setting a Fire; 218—Destroying Government Property Having a Value in Excess of $100; and 305—Possession of Anything Not Authorized.  (Id. at 36-37.)  As a result, the DHO sanctioned Petitioner with forty (40) days disciplinary segregation, loss of telephone and visiting privileges for one-hundred and eighty (180) days, loss of email privileges for one-hundred and twenty

days (120), and a monetary fine in the amount of $5,238.32. (Id. at 37.) Particularly relevant here, the DHO did not sanction Petitioner with any loss of good conduct time. See (id.).

The DHO issued the DHO report on November 10, 2021. (Id. at 38.) According to Respondent, a copy of the report was delivered to Petitioner on November 15, 2021. (Doc. Nos. 13 at 4; 13-1 at 38.) According to Petitioner, however, he did not receive a copy of the report until thirty (30) days after the hearing concluded. (Doc. Nos. 1 at 6; 14 at 2.)

Thereafter, on July 1, 2022, Petitioner filed his Section 2241 petition in this Court. (Doc. No. 1.) Petitioner asserts that he was denied due process during his disciplinary proceedings at FCI Schuylkill because he was not provided a copy of the incident report and did not receive a copy of the DHO's report until thirty (30) days after the hearing. (Id. at 6.) Following some initial administrative matters (Doc. Nos. 3, 6, 8, 9, 11), the Court, on October 27, 2022, deemed the petition filed, directed the Clerk of Court to serve a copy of the petition on Respondent, and instructed Respondent to respond to the allegations contained in the petition within twenty (20) days. (Doc. No. 11.) On November 15, 2022, Respondent complied with that Order and filed a response, arguing that the petition should be dismissed for lack of jurisdiction because Petitioner's due process challenge has no impact on the duration of his sentence. (Doc. No. 13.) On November 28, 2022, Petitioner filed

4

a "Motion to Rebuttal[,]" which the Court treats as a reply. (Doc. No. 14.) In his reply, Petitioner reasserts that his due process rights were violated in connection with his disciplinary proceedings and, as a result, the Court has jurisdiction over his Section 2241 petition. (Id.)

**II.    DISCUSSION**

Generally speaking, Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal prisoner who challenges "not the validity but the execution of his sentence." See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" see id. at 242, the United States Court of Appeals for the Third Circuit has defined this phrase to mean "put into effect" or "carry out." See id. at 243 (citation and internal quotation marks omitted).

As a result, a federal prisoner may challenge conduct undertaken by the BOP that affects the duration of the prisoner's sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990) (finding that a federal inmate's petition is actionable under Section 2241, where the inmate attacks the term of his custody by challenging the manner in which the BOP is computing his federal sentence). A federal prisoner may also challenge BOP conduct that "conflict[s] with express

5

statements in the applicable sentencing judgment." See, e.g., Cardona, 681 F.3d at 536-37 (providing that a federal prisoner's petition is actionable under Section 2241, where the prisoner attacks the execution of his sentence by showing that the BOP acted in a way that is "inconsistent with a command or recommendation in the [prisoner's] sentencing judgment").

Thus, a federal prisoner's due process challenge to a disciplinary action that results in the loss of good conduct time is properly brought under Section 2241 because it could affect the duration of the prisoner's sentence. See Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (noting that "[a] challenge . . . to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to [Section] 2241, as the action could affect the duration of the petitioner's sentence" (citations omitted)); Hall v. Warden Canaan USP, 858 F. App'x 37, 38 (3d Cir. 2021) (unpublished) (explaining that "Section 2241 is the appropriate vehicle for constitutional claims when a prison disciplinary proceeding results in the loss of good conduct time, because the action could affect the duration of the prisoner's sentence" (citations omitted)).

Here, however, Petitioner's due process challenge does not involve the loss of good conduct time. The record—as discussed above—demonstrates that the DHO did not sanction Petitioner to any loss of good conduct time as a result of his violating Codes: 199/103—Conduct Which Disrupts Most Like Setting a Fire; 218—

Destroying Government Property Having a Value in Excess of $100; and 305—Possession of Anything Not Authorized. (Doc. No. 13-1 at 37.) Rather, the record demonstrates that the DHO sanctioned Petitioner to disciplinary segregation, a monetary fine, and loss of email, telephone, and visiting privileges.

Accordingly, because Petitioner was not sanctioned with the loss of good conduct time, the Court concludes that his due process challenge to his disciplinary proceedings does not affect the duration of his sentence and, thus, is not cognizable in a Section 2241 habeas corpus petition. See Hall, 858 F. App'x at 38-39 (affirming the district court's order that it lacked jurisdiction over the Section 2241 petition because the petitioner did not allege that he had lost any good conduct time, and the record revealed that the DHO did not impose any loss of good conduct time and, thus, the petitioner's challenge to his disciplinary proceedings did not concern "how his judgment of sentence [was] being effectuated . . ."); Wert v. Warden Allenwood USP, 781 F. App'x 51, 54 (3d Cir. 2019) (unpublished) (explaining that the district court properly dismissed the Section 2241 petitioner's due process challenge for lack of jurisdiction because the petitioner had not been sanctioned with the loss of good conduct time and thus could not maintain his challenge through a habeas corpus petition).

## III. CONCLUSION

For the foregoing reasons, Petitioner's Section 2241 petition will be dismissed without prejudice for lack of jurisdiction. (Doc. No. 1.) An appropriate Order follows.

Dated: June 15, 2023

s/ Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge